IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal No. 14-3923-WJ |
| | ) | |
| **JAMES E. COLEMAN**, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION IN LIMINE TO INTRODUCE EVIDENCE AS INTRINSIC EVIDENCE AND PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States hereby notifies Defendant of its intention to introduce during its case-in-chief at trial of this matter the evidence described below.  The United States submits that all such evidence is relevant to the issues to be tried before the jury in this case, both as direct evidence of the charges in the indictment herein and pursuant to the provisions of Federal Rules of Evidence 401, 402, 403, and 404.  The United States, therefore, respectfully requests that the Court make appropriate pre-trial findings in support of the admissibility of such evidence.

## LEGAL BACKGROUND

Other-act evidence is intrinsic—and thus not subject to Rule 404(b)—when "the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged."  *United States v. Irving*, 665 F.3d 1184 (10th Cir. 2011) (citations omitted).  Intrinsic evidence is that which is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury.  Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense."  *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (citation

omitted).  *See also Elliot v. Turner Const. Co.*, 381 F.3d 995, 1004 (10th Cir. 2004) (holding that

evidence is intrinsic when it is "necessary to a full presentation of the case.").

The introduction of extrinsic evidence of other wrongs is governed by Federal Rule of

Evidence 404(b) and the factors set forth in *Huddleston v. United States*, 485 U.S. 681 (1988).

Rule 404(b) provides:

> (1) Prohibited Uses.  Evidence of a crime, wrong or other act is not admissible to prove a
> person's character in order to show that on a particular occasion the person acted in
> accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for
> another purpose, such as proving motive, opportunity, intent, preparation, plan,
> knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

The United States Supreme Court has held that for evidence of other wrongs to be

admissible:  1) the evidence must be offered for a proper purpose; 2) it must be relevant; 3) the

probative value of the evidence must not be substantially outweighed by its potential for unfair

prejudice; and 4) upon request, the trial court must instruct the jury that the other-acts evidence is

to be considered only for the proper purpose for which it was admitted.  *See Huddleston*, 485

U.S. at 691-92; *see also United States v. Morris*, 287 F.3d 985, 990 (10th Cir. 2002).

Similar acts may be introduced to support the intent element required in a criminal case.

Proof that a defendant, who denies knowledge or criminal intent, has previously taken a similar

action is evidence that the defendant acted knowingly or with a specific intent and is admissible.

*See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (recognizing that evidence of

a prior conviction for knowing possession of a firearm is admissible to prove knowing

possession of a firearm in the instant case) (quoting *United States v. Queen*, 132 F.3d 991, 996

(4th Cir. 1997)).  Since the "similar act decreases the likelihood that the charged offense was

committed with innocent intent," the evidence is admissible.  *Queen*, 132 F.3d at 996.  While

evidence of another wrongful act "must be similar to the crime charged… it need not be identical."  *United States v. McGuire*, 27 F.3d 457, 461 (10th Cir. 1994); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (evidence of other crimes that share a "signature quality" may be admitted).  Similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  *Queen*, 132 F.3d at 996 (quoting *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978).

Rule 404(b) is an inclusive rule and the evidence is to be admitted as long as it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity.  *See Moran*, 503 F.3d at 1145 (*citing United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005) and *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)).  Here, the evidence proffered by the United States should be admitted under Rule 404(b) as it is relevant evidence offered for a proper purpose with a probative value that outweighs any perceived prejudice.

There is no absolute rule regarding how much time can separate uncharged acts from charged acts.  The Tenth Circuit applies a reasonableness standard, examining the facts and circumstances of each case.  *United States v. Cuch*, 842 F.2d 1173, 1178 (10th Cir. 1988); *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.1983), *cert. denied*, 464 U.S. 845 (1983).

## FACTUAL BACKGROUND

Defendant is the sole owner of Sneakerz, Inc. ("Sneakerz"), a corporation that operated a bar and restaurant during the relevant time period.  The indictment charges Defendant with two counts of tax evasion and two counts of making false tax returns.  *See* Doc. 2.  The two tax evasion counts allege that Defendant underreported the gross receipts Sneakerz earned by

approximately $265,064 in 2008 and by approximately $200,653 in 2009, respectively.  The two

false tax return counts allege that Defendant falsely stated on his personal tax returns (again, for

2008 and 2009) that he received no income from Sneakerz besides a salary of $31,200 per year.

At trial, the United States will show that Defendant used a simple method for

underreporting Sneakerz's gross receipts.  As a business operating in New Mexico, Defendant

filed New Mexico gross receipts tax declarations on a monthly basis using the State of New

Mexico's online Combined Reporting System (CRS).  To determine his actual monthly gross

receipts, Defendant generated a monthly report from his point-of-sale system, known by its

brand name, "Aloha."  Defendant took the gross receipts number from Aloha report, divided it

by two, and then added $15,000.  That simple formula yielded a number well below his actual

gross receipts.  He declared the lower amount in his CRS submissions on a monthly basis.  He

then totaled the reduced amounts to reach an annual gross receipts number which he then

reported to the Internal Revenue Service (IRS) on his federal tax returns.

<u>**SPECIFIC ITEMS TO BE INTRODUCED**</u>

1.      **Defendant's scheme for underreporting gross income stretched back to at least 2002.**

The United States intends to show at trial that Defendant employed the method described

above since at least 2002.  In 2002, the earliest year for which records are available, Defendant

began by dividing by two his monthly receipts according to Aloha, and then adding $1,000.

Later in the year he changed to dividing by two and adding $2,000.  In 2003, Defendant began

dividing by two and adding $3,000.  Defendant continued to slowly increase the added amount

until he reached $15,000 in 2008.  Using this method, Defendant underreported Sneakerz's gross

receipts by a total of approximately $2,548,896 between 2002 and 2009.  This underreporting

scheme resulted in tax evasion of approximately $1,045,939 over that time period.

Defendant's underreporting in 2002 through 2007 is admissible at trial primarily because it is inextricably intertwined with the indicted charges as a single continuing pattern of criminal activity. The prior underreporting is not "similar" because it is actually the same as the underreporting described in the indictment. The method has not changed, even though Defendant gradually increased the additive amount – probably to thwart detection of his crimes by obscuring the relationship between the real and declared numbers and by simulating normal business growth. The 2002-2007 conduct is part of the same criminal episode as the 2008-2009 conduct in the indictment. It is therefore intrinsic to the indicted conduct and not susceptible to Rule 404 analysis. *See, e.g., United States v. Albridge*, 455 Fed.Appx. 589, 594 (6th Cir. 2012) ("Testimony about the defendant not filing his taxes from 2000–2007 evidences a singular criminal plan to evade tax obligation... thus falling outside the ambit of Rule 404(b).")

Secondly, the 2002-2007 underreporting is inextricably intertwined with the indicted conduct because it negates a possible defense. In both 2008 and 2009, Defendant declared taxable income for Sneakerz, but then claimed that he did not have to pay tax on that income due to a "net operating loss" (NOL) deduction carried over from previous years. Evidence of Defendant's underreporting from previous years shows that, even if Sneakerz was eligible for an NOL deduction in 2002, his underreported income would have quickly overwhelmed any such deduction years before 2008. The 2002-2007 underreporting is therefore direct evidence that Defendant sought to unlawfully evade taxes in filing the 2008 and 2009 returns using an NOL deduction.

Finally, in the alternative and out of an abundance of caution, if this Court should determine that the 2002-2007 underreporting is extrinsic to the indicted conduct, the 2002-2007 underreporting is admissible pursuant to Rule 404(b). The prior underreporting is clear evidence

of intent, common scheme, plan, absence of mistake and lack of accident.  Defendant followed

an identical scheme and plan from 2002 through 2009.  He clearly intended to evade taxes.  The

discrepancy between the receipts recorded by the Aloha point-of-sale system and Defendant's

reported receipts was not due to a transitory accounting error, or a computer glitch due to faulty

software, but was instead a systematic and deliberate scheme to evade taxes.  The United States

has the burden to show that Defendant acted willfully in evading taxes.  In a prosecution for a

specific intent crime, "intent is automatically at issue." *United States v. Gomez*, 763 F.3d 845,

858 (7th Cir. 2014) (*en banc*).  Prosecutors traditionally prove the willfulness element with

circumstantial evidence of the defendant's state of mind.  *See, e.g., Borchardt Rifle Corp. v.*

*Cook*, 684 F.3d 1037, 1043 (10th Cir. 2012).  The prior underreporting shows the intentionality

of Defendant's conduct and is therefore appropriate 404(b) if it is not intrinsic to the indicted

conduct.  The evidence is not more prejudicial than probative because it is simply a continuation

of the same conduct the jury will hear regarding the indicted charges.  And the United States is

amenable to an appropriate limiting instruction should the defense request one.

**2.      Defendant altered records to thwart an audit regarding tax year 2007.**

The United States intends to present computer forensic evidence that Defendant

fraudulently altered records when faced with an IRS audit.  In early 2010, IRS contacted

Defendant about an audit covering tax year 2007.  When a meeting with IRS drew near,

Defendant downloaded an Aloha report as an unsecure Microsoft Word document.  He then

altered the report to look like a monthly report, and changed the gross receipts numbers to reflect

the amounts he had previously declared to New Mexico in his CRS gross receipts filings.  He

presented the altered reports to the IRS auditor as evidence that his gross receipts reporting had

been accurate.  Several months later, IRS expanded the audit to include tax year 2008.

Defendant then went back to the altered Microsoft Word 2007 monthly reports and changed them to look like 2008 monthly reports.

Defendant's alteration of 2007 reports is intrinsic for many of the same reasons that his underreporting from 2002 to 2007 is intrinsic. Defendant committed the alteration to conceal the unitary course of evasive conduct he engaged in from 2002 all the way through 2009. Alteration of the 2007 reports is inextricably intertwined because Defendant carried out alterations of the same actual Microsoft Word documents to appear as 2008 reports.

In the alternative and out of an abundance of caution, if this Court should determine that the 2007 alterations are extrinsic to the indicted conduct, the 2007 alternations are admissible pursuant to Rule 404(b). The 2007 alterations show intent, common scheme, plan, knowledge and the absence of a mistake or accident. Altering the records shows consciousness of guilt, knowledge that his real Aloha reports showed higher numbers than he reported, and shows a deliberate and concerted effort to conceal his crimes. The 2007 alterations are relevant as direct evidence of Defendant's attempt to conceal his continuing scheme of tax evasion. The evidence is highly probative of his state of mind, but is not prejudicial because the same evidence will be presented regarding the 2008 alterations. And the United States is amenable to an appropriate limiting instruction should the defense request one.

**3.      Defendant's income statements to loan officers was inconsistent with the income he reported to IRS.**

When applying for loans in 2008 and 2009, Defendant claimed income far in excess of the amount he reported to IRS in the same time periods. For those years, Defendant presented W-2's showing that he received wages in the amount $31,200 per year (which is $2,600 per month) and no additional income from his affiliation with Sneakerz. The United States intends to show that Defendant applied for a loan with First Community Bank on February 29, 2008. In

the 2008 loan application, Defendant declared that he received $5,000 per month as salary plus

$3,750 per month as "other income" from Sneakerz.  On July 6, 2009, Defendant applied for

another loan from First Community Bank.  In the 2009 loan application, Defendant declared

$7,500 per month as salary plus $5,417 per month as "other income" from Sneakerz.

The loan applications are intrinsic, direct evidence of the falsity of Defendant's

representations to IRS in his personal tax returns in the indicted time period.  In an analogous

situation, the Third Circuit found that a defendant's income representations on loan applications

were intrinsic to his failure to file tax returns.  *See United States v. Arena*, 2015 WL 8288719, *3

(3rd Cir. 2015) ("As to the tax charges, the government implicitly endorsed the basic truth of

Arena's income claim [on the loan application], as the premise of the tax evasion charges was

that Arena failed to file tax returns despite a significant income.").

In the alternative and out of an abundance of caution, if this Court should determine that

the loan applications are extrinsic to the indicted conduct, the loan applications are admissible

pursuant to Rule 404(b).  They show knowledge, intent, absence of mistake and lack of accident.

They show that Defendant was aware of how much money he was using from Sneakerz accounts

for personal purposes, and knew that his overall income from Sneakerz far exceeded the nominal

wages he paid himself.  And they show that Defendant knew that his reported income was

insufficient to qualify for the loans he desired or the lifestyle he led.  The loan applications are

relevant as direct evidence of Defendant's income, in contradiction of his tax filings.  The

evidence is not prejudicial because the representations on the loan applications were actually

more accurate than his IRS filings.  And the United States is amenable to an appropriate limiting

instruction should the defense request one.

## CONCLUSION

8

For the foregoing reasons, the United States respectfully requests this Court to allow the above-described evidence to be offered in the United States' case-in-chief at trial in this matter pursuant to Rules 401, 402, 403 and 404, and requests findings in support of such admissibility and such other relief as may be appropriate.

Respectfully submitted:

DAMON P. MARTINEZ
United States Attorney


*/s/ Filed Electronically*
JEREMY PEÑA
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on February 29, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the below counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Joseph J. Gribble
Attorney for Defendant James E. Coleman

*/s/ Filed Electronically*
Jeremy Peña, Assistant U.S. Attorney